IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
JACKSON DIVISION


FARMERS INSURANCE EXCHANGE                                    PLAINTIFF


VS.                                CIVIL ACTION NO. 3:08-cv-649-WHB-LRA


J.W., a Minor; STEPHEN D. SULLIVAN;
SHARLETTE R. SULLIVAN, Individually and
as Next Friend of Defendant J.W., a Minor;
and MICHAEL D. BROWN, as Next Friend of
Defendant L.B., a Minor                                       DEFENDANTS


OPINION AND ORDER

        This cause is before the Court on the Motion of Plaintiff for

Summary Judgment.  Having considered the pleadings, the attachments

thereto, as well as supporting and opposing authorities, the Court

finds the Motion is not well taken and should presently be denied.


        I.  Factual Background and Procedural History

        On May, 27, 2007, Lauren Brown ("Brown") and Justin Wilson

("Wilson")[1] were involved in an all-terrain vehicle ("ATV")

accident.  At the time of the accident, Wilson was operating the

_____

        [1]  At the time this lawsuit was filed, Brown and Wilson had
been referenced by the initials "L.B." and "J.W.", respectively,
because both were then minors.  As the parties now refer to these
individuals by their full names, the Court will do likewise.

ATV, and Brown was his passenger.  On October 11, 2007, Brown, through her parents, filed a personal injury lawsuit in the Circuit Court of Rankin County, Mississippi, alleging claims of negligence against Wilson, and claims of negligent entrustment/having provided alcohol to a minor against Wilson's mother, Sharlette Sullivan.

At the time of the accident, Stephen Sullivan, who is Sharlette's husband and Wilson's step-father, was insured under a homeowners policy issued by Farmers Insurance Exchange ("Farmers"). On October 21, 2008, Farmers filed a lawsuit in this Court seeking a declaratory judgment that it did not owe a duty to indemnify or defend the claims alleged by Brown in her state court lawsuit.[2]  In support of its claim for declaratory relief, Farmers argues:

> The Sullivan homeowners policy expressly excludes from coverage any claims from liability and/or medical payments arising out of [Wilson's] operation of his ATV because coverage for personal liability and medical payments to others does not apply to bodily injury or property damage arising out of the ownership, maintenance, or use of an ATV or from the entrustment by an "insured" of an ATV to any person.  Moreover, at the time of the accident, [Wilson] was not a resident of the Sullivan household and was not in their care; therefore, neither he nor the ATV that he owned were covered under the policy on May 27, 2007.

See Compl. at ¶ XIII.

On December 2, 2009, default judgments were entered against Stephen Sullivan and Sharlette Sullivan, declaring that Farmers did

---

[2]  The Court previously found it could properly exercise subject matter jurisdiction over the declaratory judgment action brought by Farmers.  See Opinion and Order [Docket No. 18], 2-3.

not owe a duty to defend or indemnify either of them on the claims alleged by Brown.  See [Docket Nos. 19 & 20].  On May 14, 2010, a default judgment was entered against Wilson likewise declaring that Farmers did not owe a duty to defend or indemnify him on Brown's claims.  See Docket No. 34.  Farmers then moved for summary judgment on its claims for declaratory relief against Brown.  On December 9, 2009, the Court entered an Opinion and Order questioning whether the claim for declaratory relief on the issue of personal liability coverage had been rendered moot by the default judgments entered against Sharlette Sullivan and Wilson. See Opinion and Order [Docket No. 47].  As this issue had not been addressed by the parties in their initial pleadings on summary judgment, the Court granted additional time in which to file supplemental memoranda addressing the mootness/indemnity issue identified by the Court.  Having now considered the initial and supplemental pleadings, the Court is prepared to decide the mootness issue as well as the Motion for Summary Judgment.


## II.  Discussion

### A.  Mootness

     In its Motion for Summary Judgment, Farmers argues that it is entitled to declaratory relief against Brown because the subject homeowners policy expressly excludes from coverage any claim for personal liability arising out of Wilson's operation of the ATV.

3

Relevant to this issue, the homeowners policy provides:

COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1.  Pay up to our limit of liability for the damages for which the "insured" is legally liable.  Damages include prejudgment interest awarded against the "insured"; and

2.  Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount of damages resulting from the "occurrence" equals or limit of liability.

See Compl., Ex. C (Policy), at Section II.  After reviewing the these provisions, the Court questioned whether the claim of Farmers, as alleged against Brown, that the policy expressly excluded from coverage any claim for personal liability arising out of Wilson's operation of the ATV had been rendered moot by the default judgments entered against him and Sharlette Sullivan. Specifically, the Court reasoned:

Under the terms of the subject homeowners policy, Farmers is obligated to "pay up to [its] limit of liability for the damages for which the 'insured' is legally liable." Under Mississippi law, "[w]hen an insured under a liability insurance policy is sued, the insurance company is contractually obligated to pay up to the limits of the policy all sums the insured becomes legally obligated to pay." Moeller v. American Guar. and Liab. Ins. Co., 707 So. 2d 1062, 1068 (Miss. 1996).  Here, it appears that even if Wilson and/or Sharlette Sullivan are found to be legally liable for Brown's injuries in the underlying state court action, and further even if this Court were to find that the personal liability provision of the subject policy would provide coverage for Brown's claims,

4

> Farmers would have no duty to indemnify either Sharlette
> Sullivan or Wilson under the personal liability provision
> of the policy based on the default judgments that were
> previously entered against them by this Court.  Thus, it
> does not appear that Farmers currently has a "legally
> cognizable interest" in determining whether the subject
> homeowners policy expressly excludes from coverage any
> claims for liability arising out of Wilson's operation of
> the ATV because, even if such coverage were found to
> exist, Farmers would have no duty to indemnify such
> claims.

See Opinion and Order [Docket No. 47] at 3-5.  In its supplemental

memorandum, Farmers indicates that it agrees with the assessment of

the Court, i.e. that the personal liability coverage claim was

rendered moot by the default judgments entered against Sharlette

Sullivan and Wilson, and that this claim should be dismissed as

such.  See Pl.'s Supp. Mem. [Docket No. 49], at 3.  Brown, however,

argues that the entry of the default judgments against the putative

insureds did not moot the personal liability coverage issue.

Having reviewed the relevant authorities, the Court is

persuaded that the entry of the default judgments against Sharlette

Sullivan and Wilson did not necessarily moot the personal liability

coverage claim as alleged by Farmers against Brown, and that she

has standing to defend that claim.  See e.g. Hawkeye-Sec. Ins. Co.

v. Schulte, 302 F.2d 174, 177 (7th Cir. 1962) (explaining that when

an insured party is dismissed from a declaratory judgment action to

determine coverage, an injured third party has standing to remain

in the suit and defend the action because "[i]t would be anomalous

to hold ... that an actual controversy exists between [the injured

5

third party and] the [insurer,] and yet deny [the injured third party] the right to participate in the controversy"); Vermont Mut. Ins. Co. v. Everette, 875 F. Supp. 2d 1181, 1185 (E.D. Va. 1995) (finding that a case or controversy existed in a declaratory judgment action brought by insurer between liability insurer and the injured third party after default judgment had been entered against insureds). Accordingly, the Court will consider both the personal liability coverage claim as well as the medical payment to others claim as alleged against Brown is deciding the Motion for Summary Judgment.

**B.    Motion of Farmers for Summary Judgment**

**1.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure provides, in relevant part, that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The United States Supreme Court has held that this language "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party

will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also, Moore v. Mississippi Valley State Univ., 871 F.2d 545, 549 (5th Cir. 1989); Washington v. Armstrong World Indus., 839 F.2d 1121, 1122 (5th Cir. 1988).

The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record in the case which it believes demonstrate the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323. The movant need not, however, support the motion with materials that negate the opponent's claim. Id. As to issues on which the non-moving party has the burden of proof at trial, the moving party need only point to portions of the record that demonstrate an absence of evidence to support the non-moving party's claim. Id. at 323-24. The non-moving party must then go beyond the pleadings and designate "specific facts showing that there is a genuine issue for trial." Id. at 324.

Summary judgment can be granted only if everything in the record demonstrates that no genuine issue of material fact exists. It is improper for the district court to "resolve factual disputes by weighing conflicting evidence, ... since it is the province of the jury to assess the probative value of the evidence." Kennett-Murray Corp. v. Bone, 622 F.2d 887, 892 (5th Cir. 1980). Summary judgment is also improper where the court merely believes it

unlikely that the non-moving party will prevail at trial. <u>National Screen Serv. Corp. v. Poster Exchange, Inc.</u>, 305 F.2d 647, 651 (5th Cir. 1962).


## 2. Analysis

The rules governing the construction of insurance policies under Mississippi law were set forth by the United States Court of Appeals for the Fifth Circuit in <u>Centennial Insurance Co. v. Ryder Truck Rental, Inc.</u>, 149 F.3d 378 (5th Cir. 1998). Under Mississippi law:

> (1)  In cases in which an insurance policy is plain and umambiguous, a court must construe that instrument, like other contracts, exactly as written. <u>See</u> <u>George v. Mississippi Farm Bureau Mut. Ins. Co.</u>, 168 So. 2d 530, 531 (Miss. 1964).

> (2)  The court must read the policy as a whole, thereby giving effect to all provisions. <u>See</u> <u>Brown v. Hartford Ins. Co.</u>, 606 So. 2d 122, 126 (Miss. 1992).

> (3)  The court must read an insurance policy more strongly against the party drafting the policy and most favorably to the policyholder. <u>See</u> <u>Canal Ins. Co. v. Howell</u>, 160 So. 2d 218, 221 (Miss. 1964).

> (4)  When the court deems the terms of an insurance policy ambiguous or doubtful, it must interpret them most favorably to the insured and against the insurer. <u>See</u> <u>Mississippi Ben. Ass'n v. Majure</u>, 29 So. 2d 110, 112 (Miss. 1947).

> (5) When an insurance policy is subject to two equally reasonable interpretations, a court must adopt the one giving the greater indemnity to the insured. <u>See</u> <u>Caldwell v. Hartford Accident & Indem. Co.</u>, 160 So. 2d 209, 213 (Miss. 1964).

8

(6)  In cases in which the court discerns no practical difficulty in making the language of an insurance policy free from doubt, it must read any doubtful provision against the insurer.  See State Farm Mut. Auto. Ins. Co. v. Scitzs, 394 So. 2d 1371, 1372 (Miss. 1981).

(7) The court must interpret terms of insurance policies, particularly exclusion clauses, favorably to the insured wherever reasonably possible.  See id. at 1373.

(8)  Although ambiguities of an insurance policy are construed against the insurer, a court must refrain from altering or changing a policy where terms are unambiguous, despite resulting hardship on the insured. See id.

Centennial Ins., 149 F.3d at 382-83 (alterations in original).

Relevant to the declaratory action presently before the Court, the homeowner's policy provides:

COVERAGE E – Personal Liability

If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" or "property damage" caused by an "occurrence" to which this coverage applies, we will:

1.  Pay up to our limit of liability for the damages for which the "insured" is legally liable.  Damages include prejudgment interest awarded against the "insured"; and

2.  Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent.  We may investigate and settle any claim or suit that we decide is appropriate.  Our duty to settle or defend ends when the amount of damages resulting from the "occurrence" equals or limit of liability.

COVERAGE F – Medical Payment to Others

We will pay the necessary medical expenses that are incurred or medically ascertained within three years from the date of an occurrence of an accident causing "bodily injury."  Medical expenses means reasonable charges for medical, surgical, x-ray, dental, hospital, professional

nursing, prosthetic devices and funeral services... As to others, this coverage applies only:

1. To a person on the "insured location" with the permission of an "insured"; or

2. To a person off the "insured location," if the "bodily injury":

> ...

b. Is caused by the activities of an "insured";

<u>See</u> Compl., Ex. C (Policy), at 14. The subject policy also provides the following exclusions:

1. Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury" or "property damage":

> ...

f. Arising out of:

(1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owed or operated or rented or loaned to an "insured";

(2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or

(3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.

This exclusion does not apply to:

> ...

(2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:

(a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location"

10

<u>See</u> Compl., Ex. C, at 15.  For the purposes of the policy:

"Insured" means you and residents of your household who are:

a.  Your relatives; or

b.  Other persons under the age of 21 and in the care of any person named above.

<u>See</u> Compl., Ex. C, at 1.

In moving for summary judgment, Farmers argues that personal liability coverage and medical payment to others ("med pay") coverage does not exist under the homeowners policy because Wilson was not an "insured", i.e. he was not a resident of the Sullivan household, at the time of the underlying accident.  On the issue of "who is a resident", the Mississippi Supreme Court has found that this term "has no technical or fixed meaning" and that it is "flexible, elastic, slippery, and somewhat ambiguous." <u>Johnson v. Preferred Risk Auto. Ins. Co.</u>, 659 So. 2d 866, 872 (Miss. 1995) (internal citations omitted).  Mississippi has also found that, while the concepts of presence and the intent to remain for some time are the primarily concepts used to define residency, "there is no fixed formula for determining how much of [either] factor (presence, intent, or time) is required." <u>Id.</u>  Thus, under Mississippi law, "a person may have multiple residences simultaneously." <u>Aetna Cas. and Sur. Co. v. Williams</u>, 623 So. 2d 1005, 1009 (Miss. 1993); <u>Id.</u> at 1010 ("It has been held that the term 'residence' imports merely having abode at a particular place

11

which may be one of any number of such places at which one is, at least from time to time, physically present.").  "Whether a person 'resides' at a particular location is a practical question which turns on the degree of one's attachment to a particular place of abode."  Id.

Here, in support of its argument that Wilson was not a resident of the Sullivan household at the time of the underlying accident, Farmers has presented evidence that Wilson: (1) had moved into an apartment prior to the date on which the accident occurred; (2) had moved his personal belongings into the apartment; (3) had changed his driver's license to reflect the address of the apartment; (4) was working full-time; (5) paid his own bills; (6) spent the majority of his time at the apartment; and (7) stated that he had intended to remain at the apartment permanently.  See Mot. for Summ. J. [Docket No. 38], Ex. C (Wilson Examination).  In contrast, Brown submitted evidence that, at the time of the accident: (1) although Wilson had an apartment, he only stayed there a couple of months before moving back into the Sullivans's house; (2) even though Wilson had an apartment, he often went to the Sullivans's house to eat, and would stay there on occasion; (3) Sharlette Sullivan paid "alot" of Wilson's utility bills and other costs for the apartment; (4) Wilson continued to receive mail at the Sullivans's house; (5) Stephen Sullivan owned, and continued to make payments on, the truck Wilson used for transportation; (6)

12

Wilson had personal belongings at the Sullivans's house; and (7) Sharlette Sullivan continued to provide care for Wilson including doing his laundry. <u>See</u> Resp. to Mot. for Summ. J. [Docket No. 43], Ex. 1 (Sharlette Sullivan Examination). Based on the evidence before it, the Court finds that there exists a genuine issue of material fact with regard to whether Wilson was a resident of the Sullivan household at the time of the underlying accident. <u>See e.g.</u> <u>Williams</u>, 623 So. 2d at 1010 (finding that a minor was a resident of his father's household for the purpose of determining insurance coverage in a case in which the minor had a room and personal possessions there; stayed there at least occasionally; depended, in part, on his father to provide transportation and money; and was "still his father's son and a part of his father's family.").

In support of summary judgment, Farmers also argues that Wilson was not a resident of the Sullivan household because he was an emancipated minor at the time of the underlying accident. <u>See</u> Pl.'s Reply [Docket No. 46], at 2-3 (arguing that "[w]hile it is true that Mississippi courts have held that a minor is legally unable to establish a residence separate and apart from his or her parents, the Mississippi Supreme Court has carefully and expressly limited that rule to unemancipated minors.")(alterations in original)(citations omitted). Under Mississippi law, a court may determine emancipation has occurred when a child:

(i) Discontinues full-time enrollment in school having attained the age of eighteen (18) years, unless the child is disabled, or

(ii) Voluntarily moves from the home of the custodial parent or guardian, establishes independent living arrangements, obtains full-time employment and discontinues educational endeavors prior to attaining the age of twenty-one (21) years, or

(iii) Cohabits with another person without the approval of the parent obligated to pay support

MISS. CODE ANN. § 93-11-65(b). Here, Farmers argues that Wilson should be declared emancipated because he had moved into his own apartment, had obtained full-time employment, and had discontinued his education endeavors. See Pl.'s Reply [Docket No. 46] at 3-5.

The Court finds that because there is conflicting evidence in the record regarding whether the Sullivans continued to provide financial and personal support to Wilson after he moved, there exists a genuine issue of material fact with regard to whether he would be considered emancipated under Mississippi law. See e.g. Wesson v. Wesson, 818 So. 2d 1272, 1282 (Miss. App. Ct. 2002) (finding, in a case in which the record showed a minor had briefly moved in with a friend and worked full-time but the arrangement only lasted for a month before he had to move back in with his mother because he could not afford to support himself, and where the record also showed that the minor's family continued to provide financial assistance and transportation for him, that, although the minor "possibly met the technical statutory requirements for emancipation, he was unable to support himself on his own, thus

14

defeating this requirement for emancipation.");[3] <u>Andrews v.</u> <u>Williams</u>, 723 So. 2d 1175 (Miss. Ct. App. 1998)(finding that a minor had not been emancipated under Mississippi law because, even though he satisfied the statutory requirements for emancipation "in the most technical sense", as a practical matter he was unable to support himself independently and relied on his parent to supplement his income and manage his financial affairs in order to provide for his necessities).

For the reasons discussed above, the Court finds that there exists genuine issues of material fact with regard to whether Wilson was a resident of the Sullivan household at the time of the underlying accident and/or whether he had been emancipated at that time. As such, the Court finds that there exists a genuine issue of material fact with regard to whether Wilson is an "insured" for the purposes of coverage under the homeowners policy. Accordingly,

--------------------------------------------------

[3] In <u>Wesson</u>, the court discussed Mississippi law on emancipation as follows:

> Emancipation, as employed in the law of parent and child, means the freeing of a child for all the period of its minority from the care, custody, control, and service of its parents; the relinquishment of parental control, conferring on the child the right to its own earnings and terminating the parent's legal obligation to support it ... "[e]mancipation has also been defined as the grant by a parent of the right to the services and control of a minor child. In a general sense, parental emancipation signifies a surrender and renunciation of the correlative rights and duties touching the care, custody, and earnings of the child."

<u>Caldwell v. Caldwell</u>, 579 So. 2d 543, 549 (Miss. 1991).

15

the Court finds the Motion of Farmers for Summary Judgment on the issue of whether Wilson was a resident of the Sullivan household for the purposes of determining coverage under the homeowners policy should be denied.

Farmers has also moved for summary judgment arguing that Brown's claims in the underlying lawsuit are excluded from personal liability and/or med pay coverage under the motor vehicle exclusion contained in the homeowners policy. Brown, however, maintains that her claims are expressly excepted from that exclusion. Relevant to the parties's arguments, the subject policy provides:

> 1.   Coverage E – Personal Liability and Coverage F – Medical Payments to Others do not apply to "bodily injury" or "property damage":
>
>       ...
>
> f.   Arising out of:
>
> (1) The ownership, maintenance, use, loading or unloading of motor vehicles or all other motorized land conveyances, including trailers, owed or operated or rented or loaned to an "insured";
>
> (2) The entrustment by an "insured" of a motor vehicle or any other motorized land conveyance to any person; or
>
> (3) Vicarious liability, whether or not statutorily imposed, for the actions of a child or minor using a conveyance excluded in paragraph (1) or (2) above.
>
> This exclusion does not apply to:
>
>       ...
>
> (2) A motorized land conveyance designed for recreational use off public roads, not subject to motor vehicle registration and:
>
> (a) Not owned by an "insured"; or

(b) Owned by an "insured" and on an "insured location"
See Compl., Ex. C, at 15.

Under the express terms of the homeowners policy, Farmers is not obligated to provide personal liability and/or med pay coverage for bodily injuries that arise out of either (1) the ownership or use of motorized land conveyances that are owed or operated by an insured or (2) the entrustment of a motorized land conveyance by an insured to any person.  The parties do not dispute whether an ATV constitutes a "motorized land conveyance" for the purposes of the motor carrier exclusion, and the Court finds an ATV would be considered as such under the plain meaning of that phrase.  Thus, even if the issue of whether Wilson is an "insured" under the homeowners policy is resolved in Brown's favor, i.e. it is found that Wilson is an "insured" for the purposes of coverage under the policy, because Brown claims she was injured as a result of Wilson's use of a motorized land conveyance and/or as a result of Sharlette Sullivan's entrustment of a motorized land conveyance to Wilson, the Court finds her bodily injury claims would be excluded from both personal liability and med pay coverage under the motor carrier exclusion in the homeowners policy.

Brown, however, argues that the motor carrier exclusion does not apply because the ATV was designed for recreational, off-road use and, therefore, her claims fall within the exception to that exclusion.  As discussed above, under the express language of the homeowners policy, the motor carrier exclusion does not apply to

17

claims involving a motorized land conveyance that is designed for off-road recreational use, and is not subject to the laws governing motor vehicle registration[4] provided (1) it is not owned by an insured, or (2) is owned by an insured and on an insured location.

In support of her claim that the exception to the motor carrier exclusion applies, Brown argues that it is unclear as to who was the owner of the ATV involved in the underlying accident.[5] On this issue, the record shows that the ATV had been purchased by Wilson's grandmother and given to him as a gift when he was approximately fifteen years old. See Resp. to Mot. for Summ. J., [Docket No. 43] Ex. 1 (Sharlette Sullivan Examination), at 20. As Wilson received the ATV as a gift from his grandmother, and there has been no showing that the grandmother maintained any control over the ATV thereafter, Wilson would be considered the owner of the ATV under Mississippi law by virtue of that gift. See e.g. Ross v. Brasell, 511 So. 2d 492, 496 (Miss. 1997) (finding that "for there to be a valid gift inter vivos the following elements must be present: (1) a donor competent to make a gift, (2) a voluntary act of the donor with donative intent, (3) the gift must

---

[4]   The parties do not dispute that the ATV involved in the underlying accident was designed for off-public road recreational use, and is not subject to the Mississippi motor vehicle registration law.

[5]   On this issue, Brown argues that, according to Sharlette Sullivan, Wilson's grandmother did not give her the title for the ATV, and she did not know of its whereabouts. See Resp. to Mot. for Summ. J. at 1 (Sharlette Sullivan Examination), at 20-21.

be complete with nothing else to be done, (4) there must be delivery to the donee, and (5) the gift must be irrevocable). Further, according to Sharlette Sullivan, because Wilson had received the ATV as a gift, she assumed he was the owner of the ATV.  See Mot. for Summ. J., [Docket No. 38] Ex. E (Sharlette Sullivan Examination), at 19.  Thus, it appears that Wilson was the owner of the ATV at the time of the underlying accident.

Although the record shows that Wilson was the owner of the ATV, the Court cannot presently determine whether the exception to the motor carrier exclusion applies based on that ownership.  For example, in her state court complaint, Brown alleges a claim of negligent entrustment against Sharlette Sullivan.  As discussed above, Farmers would have no duty to provide personal liability or med pay coverage on this claim based on the motor carrier exclusion in the homeowners policy unless the exception to that exclusion were found to apply.  Here, the exception to the exclusion would apply in the event the ATV was not owned by an insured.  Thus, if it is determined that Wilson was not an "insured" for the purposes of the subject policy, then the ATV would not be "owned by an insured" and the exception to the motor carrier exclusion could potentially apply to Brown's negligent entrustment claim.  If, however, it is determined that Wilson was an "insured" for the purposes of the subject policy, then the exception would not apply as the ATV was "owned by an insured" and it does not appear that

19

Case 3:08-cv-00649-WHB-LRA   Document 54   Filed 03/23/11   Page 20 of 21

the underlying accident occurred on an "insured location."[6]    As the issue of whether the motor carrier exclusion or the exception to that exclusion applies in this case cannot be decided until a determination is made regarding whether Wilson is an "insured" under the subject homeowners policy, the Court finds the Motion of Farmers for Summary Judgment on the issue of whether the motor carrier exclusion bars personal liability and/or med pay coverage on Brown's underlying state law claims should presently be denied.

Finally, Brown argues that the motor carrier exclusion does not apply in this case because the Homeowners Choice Endorsement ("Endorsement") purchased by Stephen Sullivan expressly provides that that exclusion does not apply to personal injury coverage. See Resp. to Summ. J. [Docket No. 44], at 8-9.  On this issue, the Court finds that while the Endorsement clearly provides that certain exclusions in the homeowners policy, including the motor carrier exclusion, "do not apply to personal injury coverage", see id., Ex. 2, at 5-6, the Endorsement expressly defines "personal

---

    [6]  An "insured location" under the homeowner's policy includes the residence premises; other premises, structures, and grounds used by an insured as a premises; premises used by an insured in connection with a premises; any part of a premises where an insured is temporarily residing; vacant land that is owned or rented by an insured; land owned by an insured on which a residence for the insured is being built; cemetery plots of the insured; or any part of a premises that is rented to an insured for non-business use.  See Compl., Ex. C, at 1.  Here, the record shows that the underlying ATV accident occurred at "Water Park's curve", which is located approximately 10 to 20 miles from the Sullivan's house.  See Mot. for Summ. J., Ex. C (Wilson Examination), at 23-24.

injury" to include such offenses as false arrest, imprisonment, malicious prosecution; wrongful eviction, wrongful entry or invasion of the right of private occupancy; libel, slander, or defamation of character; and/or discrimination because of race, color, religion or national origin.  Id.  Here, because Brown's underlying state court claims do not arise from "personal injuries", as that term is expressly defined in the subject Endorsement, but arise instead from bodily injuries, the Court finds she has failed to show that the Endorsement would bar the applicability of the motor carrier exclusion in this case.

### III.  Conclusion

For the foregoing reasons:

IT IS THEREFORE ORDERED that the Motion of Plaintiff for Summary Judgment [Docket No. 38] is hereby denied.

IT IS FURTHER ORDERED that a telephonic status conference is hereby scheduled for April 12, 2011, at 10:30 a.m.  The telephonic conference shall be initiated by counsel for the plaintiff.  The parties should be prepared to discuss whether this case should proceed to trial or be stayed pending conclusion of the underlying state court action.

SO ORDERED this the 23rd day of March, 2011.


                                    s/ William H. Barbour, Jr.
                                    UNITED STATES DISTRICT JUDGE

21